THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| WINDY YARBOROUGH | : | |
| | : | |
| Plaintiff, | : | Civil Action File No.: |
| | : | |
| v. | : | _____ |
| | : | |
| THE SUZUKI SCHOOL | : | |
| | : | JURY TRIAL DEMANDED |
| Defendant. | : | |
| | : | |
| _____ | : | |

## COMPLAINT

COMES NOW Plaintiff Windy Yarborough (hereinafter "Yarborough" or "Plaintiff") and through the undersigned counsel of record, hereby files this Complaint against The Suzuki School (hereinafter "Defendant" or "the School") showing the Court as follows:

## JURISDICTION AND VENUE

1.

This is an action for (1) discrimination based on race in violation of Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. 2000e *et seq.*, ("Title VII"); (2) discrimination based on race in violation of 42 U.S.C. § 1981 ("Section 1981"); (3) discrimination based on age in violation of Age Discrimination in Employment

Employment Act of 1967, 29 U.S.C. §§ 621 *et seq.*, ("ADEA"); (4) retaliation for engaging in activity protected under Title VII; (5) retaliation based on engaging in activity protected under Section 1981;(6) Negligent Retention and Supervision; and (7) Intentional Infliction of Emotional Distress. This Court has supplemental jurisdiction over Plaintiff's claims arising under state law pursuant to 28 U.S.C. §1367.

2.

Venue in this district and division is proper under 28 U.S.C. § 1391, as Defendant is located in the Northern District of Georgia, Atlanta Division, and the unlawful discriminatory conduct complained of herein occurred in this district and division.

3.

All conditions precedent to jurisdiction under Title VII have either occurred or been complied with; specifically, Plaintiff filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff received a Notice of Right to Sue on September 11, 2014, a copy of which is attached hereto as **Exhibit A**. Plaintiff has brought suit within ninety (90) days of receipt of the Notice of Right to Sue.

## PARTIES

4.

Plaintiff Yarborough, a forty-seven year old African-American female, is a citizen of the United States, and is subject to the jurisdiction of this Court.

5.

Defendant is a preparatory preschool licensed to do business in the State of Georgia.  Defendant may be served with process by delivering a copy of the Summons and Complaint to its President, Paula Charles, at the School's principal business address which is 443 East Paces Ferry Road, Atlanta Georgia 30305.

## FACTUAL ALLEGATIONS

6.

Plaintiff began her employment with Defendant when she was hired as a teacher in September 1987.  For nearly twenty-seven (27) years, Plaintiff received perfect performance reviews and enjoyed a spotless employment record. For much of her time working for Defendant, Plaintiff enjoyed teaching and did her best to make the School a positive working environment. Despite her efforts, Plaintiff was regularly forced to endure derogatory and demeaning comments, harassment, humiliation, and intimidation because of her race.

7.

In 2001, Ms. Allison Gill, a Caucasian female, was assigned to be a co-teacher in Plaintiff's classroom.  By 2003, Plaintiff had been replaced in the classroom by Ms. Gill and relegated to an untitled administrative support position in spite of her stellar job performance and years of experience.  Ms. Markham attempted to convince Plaintiff that the reassignment was a promotion, but Plaintiff was not given a raise, and not given a title commensurate with her new responsibilities.  As recent as 2006, she still wasn't listed as an employee of the School on the bulletin board at the School's front entrance.  Subsequently in 2006, Plaintiff was given the title "Parent Liaison" but still received less compensation than other employees who held similar positions.

8.

In 2004, Paula Charles, a Caucasian female, became President of the School and Plaintiff and other African-American employees began to experience even more pervasive discrimination.  In fact, from the very first interaction Plaintiff had with Ms. Charles, it was apparent that Ms. Charles harbored racial animosity toward Plaintiff.  Ms. Gill and Ms. Charles frequently targeted Plaintiff for harassment and bullying.  Ms. Gill would falsely accuse Plaintiff of being obstinate

or disruptive and invent incidents of interpersonal conflicts between herself and

Plaintiff. Ms. Gill would complain to Ms. Charles about Plaintiff's alleged

behavior. Ms. Charles would respond by summoning Plaintiff into her office for

private meetings during which Ms. Charles, often with Ms. Gill's participation,

would interrogate Plaintiff about the phantom incidents and bully Plaintiff until she

was reduced to tears. Ms. Charles and Ms. Gill would mock Plaintiff, interrupt her

when she tried to speak on her own behalf, and would not allow her to leave Ms.

Charles' office until she apologized to Ms. Gill for the imagined incident or

admitted to doing things Plaintiff never actually did. Plaintiff was targeted for this

harassment because of her race.

9.

Another female African-American employee, Brook Dennard Jones, was

subjected to the same type of harassment and resigned as a result. Ms. Jones, who

was approximately twenty-two years old, had been hired as an admissions director.

She and Plaintiff were the only African-American's on Defendant's administrative

staff until Ms. Jones resigned. Ms. Charles' response to Ms. Jones's resignation

was good riddance because she did not want to have "a beautiful, smart, *black* girl

coming in and taking over and running her business." Defendant replaced Ms. Dennard Jones with a Caucasian employee.

10.

On one occasion, Ms. Charles' son relayed to Plaintiff that Ms. Charles would not allow him to send out invitations to his high school graduation to friends and family because she thought it was a "black thing" and, therefore not appropriate for a Caucasian child. Ms. Charles' son informed Plaintiff that his mother often spoke about African-Americans in negative and offensive terms at home. On another occasion, when Defendant was revamping its safety and security protocols in the wake of several recent school shootings, the Caucasian employees were given safe routes to escape if a gunman entered the School's campus. Plaintiff, who was pregnant at the time, was not given any instructions for a safe escape. Instead, she was told that she should confront the gunman in the lobby and try to disarm him verbally. Plaintiff asked repeatedly where she would go. To which Ms. Markham gruffly replied "I guess you just have to take the bullet" and someone would come along and drag her corpse back to where the other School staff would be hiding.

11.

Defendant's Head of Schools, Debra Markham, a Caucasian female and other Caucasians employed by Defendant intentionally sought to make Plaintiff and other African-American employees feel like second class citizens. Ms. Markham and other Caucasian employees regularly made offensive statements that were racially charged or based on racial stereotypes. For example, when a pregnant African-American teacher, who was about to have her third child, was discussing childcare and balancing work with some other employees, Ms. Markham mentioned to her, "You need to do like they did in the old days, when women worked the fields, they had their babies, strapped them on, and went right back to work." In another instance, Ms. Markham asked Plaintiff if she agreed that an African-American prospective parent was a drug dealer just because he was dressed in expensive clothing. Ms. Markham remarked to Plaintiff, "I think he's a drug dealer, what do you think?" In a separate instance, Mr. Robert Charles, Chief Financial Officer of the School, along with administrative staff members was in a Discrimination seminar when an Asian staff member brought to everyone's attention, that Mr. Charles and other Caucasians often make fun of African-American names in HR meetings. The staff member was sobbing by the end of the

exchange because Mr. Charles became belligerent and insisted that such conduct was neither wrong nor offensive.

12.

Additionally, Defendant routinely screens the prospective employee resumes submitted to Defendant by members of the public to determine if the applicants are African-American. Defendant destroys resumes from applicants whose names suggest that they are non-Caucasian. Indeed, Plaintiff personally witnessed Ms. Markham rip up and throw away a resume for one applicant because the applicant's name sounded African-American. Ms. Markham (and later Ms. Charles) would make a habit of asking Plaintiff to give her personal opinion of African-American applicants, but was never asked to similarly assess Caucasian applicants. One member of Defendant's management staff would frequently say to Plaintiff and others that an African-American applicant "was ghetto" or "acts ghettoish" in order to demean the applicant in derogatory, racially offensive terms. Defendant also makes a deliberate effort to keep a small number of African-American students in the School's various classrooms to ensure that the classes remain predominately Caucasian. Plaintiff's own child was twice denied admission to a class because he is half African-American and there were already enough African-American children in the class. Defendant's Caucasian staff felt

8

that his admission to the class would upset the desired racial composition of

majority Caucasian students.

13.

Plaintiff was also denied opportunities for advancement and promotion

during the time she was employed by Defendant.  Plaintiff had an exemplary

record and more than 25 years of experience working at the School, however, she

was passed over for promotion in favor of mostly younger and/or Caucasian

female employees.  For example, in around 2003, Ms. Gill was moved out of her

teaching role and promoted to Curriculum Director.  Ms. Gill assumed many of the

duties Plaintiff had been performing for years.   Defendant never inquired if

Plaintiff was interested in the Curriculum Director position or allowed her to apply

for it or many other positions, despite Plaintiff's substantial experience performing

the duties of that position and had expressed her desire for advancement.  When

Plaintiff approached Ms. Charles and Ms. Markham to ask why she was not

considered for promotion despite her experience, she was told that Ms. Gill was

given the Curriculum Director position and given other promotions because she

had a degree and Plaintiff did not. Ms. Gill had <u>no</u> such degree.  Despite the fact

that she misrepresented her educational level, Ms. Gill was allowed to keep her

higher paying position, was given numerous other upper-level positions over time and given time to complete her education online.  Defendant also paid for Ms. Gill to obtain certifications for her employment with the School.  Ms. Gill went on to become the Director at the School's Northside Campus. Upon information and belief, Ms. Gill has still not obtained a degree and, thus, is not more qualified for promotion than the Plaintiff.

14.

By contrast, Plaintiff was never given the opportunity to advance her education.  Defendant paid for educational courses for many Caucasian staff members so that they could obtain Montessori certifications, but intentionally failed to inform or offer Plaintiff the same opportunities.

15.

Plaintiff and many other African-American employees repeatedly complained to Ms. Charles, Ms. Markham and other School administrators about the mistreatment they were subjected to because of their race.  Defendant, however, took no corrective action.  Plaintiff was dismissively told by Ms. Markham that there was nothing to be done and that she needed to "just take the high-road."  The pervasive atmosphere of race based discrimination and

intimidation caused some employees to refer to the School as "The Big House" and lament that if they [the African-American employees] didn't behave they would be "whipped by the master" as if they were enslaved on an antebellum plantation.

16.

Eventually, Defendant sought to get rid of Plaintiff altogether in retaliation for her complaints about harassment and discrimination. In or around May 2014, Ms. Charles intensified her harassment of Plaintiff. Ms. Charles began demanding that Plaintiff attend impromptu meetings that were unnecessary. During these meetings, Ms. Charles and Ms. Neli Todorova, Director of the School's Buckhead Campus, would bully Plaintiff regarding utterly manufactured issues with her job performance and make derogatory comments about Plaintiff's age and the length of time she had been employed by the School. Ms. Charles would frequently comment that Plaintiff had been at the School too long and that she was too old to learn anything else. Upon overhearing a conversation between Plaintiff and another employee about Plaintiff's desire to have another child, Ms. Markham told Plaintiff it would never happen because Plaintiff was too old and " it's never gonna happen, her eggs are too old, they're dried up."

17.

For years, Ms. Charles made it known to the School employees that she wanted to hire younger staff members to work at the School. Defendant began firing or forcing to quit, primarily African-American employees deemed too old for continued employment. Indeed, Ms. Charles directed Ms. Markham and another employee to fire Anna Parker, an African-American female who had been employed by the school for over15 years. Ms. Parker was widely regarded as one of the best teachers the School had ever had. Ms. Parker was supposedly fired because two Caucasian teachers reported that she did not want to collaborate with other teachers. Around the same time, another older employee was informed that she was going to be transferred back into a teaching role, the duties of which the employee could not perform because of her age and physical condition. Defendant insisted on going forward with the transfer until the employee agreed to go into early retirement within the year.

18.

All of the mostly Caucasian administrative staff employed by Defendant received raises and bonuses each year. In May 2014, Plaintiff was told that she would not get any additional compensation even though other administrative employees would still be eligible.

19.

Around the same time period, Brad Longernecker, a Caucasian male, employee of Defendant, told Plaintiff that he and a few other Caucasian employees got together and decided that she should be cleaning toilets and performing other janitorial tasks.  During the time that Plaintiff was employed at the School, Mr. Longernecker exhibited a pattern of behaving in a racially offensive manner toward African-American and Hispanic employees of the School and he was allowed to engage in such conduct without reprisal.

20.

On or around July 17, 2014, Defendant announced to the School's parents and staff that Ms. Charlie Jones would be assuming the role of Assistant Director of the Buckhead Campus, and would be responsible for duties related to Front Desk Operations.  Ms. Jones' new position effectively eliminated Plaintiff's job duties.  In this same announcement, Defendant announced that Plaintiff had been asked to assume a teaching role in the school because of her vast teaching experience when, in truth, Plaintiff had been demoted to an entry-level associate position.  This new role had substantially reduced pay, required Plaintiff to work at a different campus, and required Plaintiff to obtain an additional certification,

primarily at her own expense, as a precondition to employment.  In fact, Defendant gave Plaintiff a "new hire" letter which effectively eliminated her 27 years of service at the School and forced her to start at ground zero.  Defendant knew Plaintiff would not be able to accept the position for several reasons not the least of which were that (1) her son was enrolled in classes at another campus. Because of the amount of travel involved, Plaintiff would not be able to get her son to school on time and get to work on time, and (2) with substantially reduced pay, Plaintiff would not even be able to afford to pay her son's school tuition.  Although Plaintiff was given a little over a week to decide if she would accept the demotion, she was told two days before this time period expired that the position had been given away and was no longer available.  Subsequently, Defendant then gave Plaintiff another "opportunity" at yet another campus with a week to respond with her acceptance or rejection.  Although Plaintiff responded in a timely manner, Defendant claimed it did not receive Plaintiff's email response.

21.

Thereafter, Defendant sent Plaintiff several communications insisting that she had resigned her employment. On or around August 1, 2014, Defendant sent Plaintiff a Separation Notice and reported to the Georgia Department of Labor that she had resigned when, in truth, her employment was terminated by Defendant. Although Plaintiff was told that her original position as Parent Liaison was being eliminated, Defendant subsequently revived the position and hired a Caucasian female to fill it.

22.

Defendant subjected Plaintiff to harassment and denied her opportunities for advancement because she is African-American. Defendant eliminated Plaintiff's job in attempt to force Plaintiff to resign because of her age and in retaliation for her complaints about the racially discriminatory treatment she suffered while employed by Defendant.

## COUNT ONE
## RACE DISCRIMINATION IN VIOLATION
## OF TITLE VII, 42 U.S.C. § 2000e *et seq.*

23.

Plaintiff realleges and incorporates by reference each and every preceding paragraph as if fully set forth herein.

24.

Plaintiff, an African-American female, was repeatedly discriminated against by Defendant during the course of her employment.

25.

For example, Plaintiff was forced to endure a hostile work environment pervaded by racially insensitive and inflammatory remarks.  Plaintiff was forced to endure bullying, harassment, intimidation, and humiliation, which were not imposed upon Caucasian employees and for which there was no legitimate basis. Plaintiff was denied the opportunity for promotion to Curriculum Director and other positions, despite her experience and qualifications, in favor of less qualified younger and/or non-African-American candidates who lacked Plaintiff's experience and seniority.  For example, Neli Todorova, Angela Han, Lauren Soedarto, Allison Gill and Ashley Darcy were all promoted and given opportunities for advancement even though they were less qualified than Plaintiff.

Plaintiff was denied educational opportunities provided by Defendant to its Caucasian employees. Defendant used Plaintiff's lack of formal education as a pretext for denying her promotions within the School, but allowed Allison Gill to be promoted even though she also lacked formal education and did not have the same level of work experience as Plaintiff. Eventually, Plaintiff's position was eliminated altogether, she was effectively demoted, and, ultimately, her employment was essentially terminated by Defendant. Subsequent to Plaintiff's termination, Defendant revived her position as a Parent Liaison and hired a Caucasian employee to replace her. Plaintiff was subjected to this treatment by Defendant because of her race.

26.

Defendant has violated Title VII, 42 U.S.C. § 2000e *et seq.*, thus entitling Plaintiff to all appropriate relief provided thereunder.

27.

As a direct and proximate result of the unlawful discriminatory conduct of Defendant, committed in derogation of Plaintiff's federally protected rights, Plaintiff has suffered lost wages and benefits of employment in an amount to be determined at trial.

28.

As a direct and proximate result of the intentional and unlawful conduct of Defendant, committed in derogation of Plaintiff's federally protected rights, Plaintiff has suffered and continues to suffer emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, embarrassment, damage to her reputation, and other past and future pecuniary losses.

### COUNT TWO
### RETALIATION IN VIOLATION OF
### TITLE VII, 42 U.S.C. § 2000e *et seq.*

29.

Plaintiff realleges and incorporates by reference each and every preceding paragraph as if fully set forth herein.

30.

Title VII of the Civil Rights Act of 1964, as amended, prohibits employers from retaliating against employees who engage in a protected activity on the basis of race, including opposing racial discrimination.

31.

The relationship between Plaintiff and Defendant was a relationship of employee to employer within the meaning of 42 U.S.C. § 2000e *et seq.*, such that a

cause of action exists where retaliation on the basis of opposing and reporting racial discrimination is alleged to be the causative agent of an adverse action directed to the employee by the employer.

### 32.

Defendants' decision to take adverse employment action against Plaintiff after Plaintiff complained about the racially discriminatory conduct and racially hostile work environment that she suffered violated Title VII's anti-retaliation provisions.

### 33.

Defendants' repeated refusals to promote Plaintiff and ultimate decision to demote Plaintiff and eliminate Plaintiff's job because she opposed Defendants' race based discriminatory conduct and disparate treatment constitutes unlawful retaliation against Plaintiff in violation of Title VII.

### 34.

The retaliation to which Plaintiff was subjected by Defendants violated 42 U.S.C. § 2000e *et seq.*, thus entitling her to all appropriate relief provided under the statute.

35.

Defendants' actions with respect to Plaintiff have shown willful misconduct, malice, fraud, wantonness, oppression, and complete want of care, thus entitling Plaintiff to an award of punitive damages in order to deter, punish and penalize Defendants for and from such conduct in the future.

36.

Defendants' actions were willful, deliberate, and intended to cause Plaintiff harm and/or were committed with reckless disregard of the harm caused to Plaintiff in derogation of her federally protected rights.

37.

Defendants willfully and wantonly disregarded Plaintiff's rights as an employee, and Defendants acted in bad faith by retaliating against Plaintiff because she objected to Defendants' race based discriminatory practices.

38.

As a direct and proximate result of Defendants' intentional and unlawful actions, Plaintiff has suffered lost compensation and other benefits of employment,

emotional distress, inconvenience, loss of income, humiliation, danger to her reputation, and other past and future pecuniary losses.

## COUNT THREE
## RACE DISCRIMINATION UNDER 42 U.S.C. § 1981

### 39.

Plaintiff realleges and incorporates by reference each and every preceding paragraph as if fully set forth herein.

### 40.

The employment relationship between Plaintiff and Defendant Board of Regents gives rise to a cause of action pursuant to 42 U.S.C. § 1981, where racial discrimination is alleged to be the causative agent of an adverse action within the scope of an employment relationship.

### 41.

The ongoing intentional discrimination to which Plaintiff was subjected by Defendants because of her race was in violation of 42 U.S.C. § 1981, thus entitling her to all appropriate relief provided under the statute.

42.

As alleged herein, Plaintiff was forced to endure a hostile work environment pervaded by racially insensitive and inflammatory remarks.  Plaintiff was forced to endure bullying, harassment, intimidation, and humiliation which were not imposed upon Caucasian employees and for which there was no legitimate basis. Plaintiff was denied the opportunity for promotion to Curriculum Director and other positions, despite her experience and qualifications, in favor of less qualified younger and/or Caucasian employees.  Plaintiff was denied educational opportunities provided by Defendant to its Caucasian employees.  Defendant used Plaintiff's lack of formal education as a pretext for denying her promotions within the School. Plaintiff's position eliminated, she was effectively demoted, and, ultimately, her employment was essentially terminated by Defendant.  Plaintiff was subjected to this treatment by Defendant because of her race.

43.

Defendant's actions constituted intentional discrimination based on Plaintiff's race and impacted Plaintiff's terms, conditions and privileges of employment.

44.

Defendant's actions were the products of unlawful racial animus on the part of Defendant.  Defendant had no legitimate, non-discriminatory purpose, motive or intent to justify its actions against Plaintiff.

45.

Defendant intentionally, willfully and wantonly disregarded Plaintiff's rights as an employee and Defendant's discriminatory actions were undertaken in bad faith.

46.

As a direct and proximate result of Defendant's intentional and unlawful conduct, which was intended to cause Plaintiff harm, and/or was committed with reckless disregard of the harm caused to Plaintiff, and in derogation of her federally protected rights, Plaintiff has suffered and continues to suffer emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, embarrassment, danger to her reputation, and other past and future pecuniary losses by denying Plaintiff promotion or advancement opportunities at the School on the basis of her race.

## COUNT FOUR
## RETALIATION IN VIOLATION OF 42 U.S.C. § 1981

47.

Plaintiff realleges and incorporates by reference each and every preceding paragraph as if fully set forth herein.

48.

The employment relationship between Plaintiff and Defendant gives rise to a cause of action pursuant to 42 U.S.C. § 1981, where racial discrimination is alleged to be the causative agent of an adverse action within the scope of an employment relationship.  A cause of action exists where retaliation on the basis of opposing and reporting racial discrimination is alleged to be the causative agent of an adverse action directed to the employee by the employer.

49.

Defendant's decision to take adverse employment action against Plaintiff after Plaintiff complained about the racially discriminatory conduct and racially hostile work environment that she suffered violated 42 U.S.C. § 1981.

50.

Defendant's repeated refusals to promote Plaintiff and ultimate decision to demote Plaintiff and eliminate Plaintiff's job because she opposed Defendant's race based discriminatory conduct and disparate treatment constitutes unlawful retaliation against Plaintiff in violation of 42 U.S.C. § 1981.

51.

The retaliation to which Plaintiff was subjected by Defendants violated 42 U.S.C. § 1981, thus entitling her to all appropriate relief provided under the statute.

52.

Defendant's actions with respect to Plaintiff have shown willful misconduct, malice, fraud, wantonness, oppression, and complete want of care, thus entitling Plaintiff to an award of punitive damages in order to deter, punish and penalize Defendant for and from such conduct in the future.

53.

Defendant's actions were willful, deliberate, and intended to cause Plaintiff harm and/or were committed with reckless disregard of the harm caused to Plaintiff in derogation of her federally protected rights.

54.

Defendant willfully and wantonly disregarded Plaintiff's rights as an employee, and Defendant acted in bad faith by retaliating against Plaintiff because she objected to Defendant's race based discriminatory practices.

55.

As a direct and proximate result of Defendant's intentional and unlawful actions, Plaintiff has suffered lost compensation and other benefits of employment, emotional distress, inconvenience, loss of income, humiliation, danger to her reputation, and other past and future pecuniary losses.

## COUNT FIVE
## AGE DISCRIMINATION IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT, 29 U.S.C. § 621 *et seq.*

56.

Plaintiff realleges and incorporates by reference each and every preceding paragraph as if fully set forth herein.

57.

Plaintiff is forty-seven years of age. Defendant repeatedly indicated to Plaintiff that she was too old, that she had been employed by Defendant too long, and that Defendant wished to have younger employees on staff at the School.

58.

Defendant systemically eliminated employees, like Plaintiff, that it deemed

to be too old for continued employment by forcing them into retirement, firing

them for phony reasons, or eliminating their jobs in an effort to force them to quit.

Defendant specifically targeted older, African-American female employees for

dismissal.  Defendant also routinely promoted younger, non-African-American

employees while denying opportunities for advancement to Plaintiff, who had

more seniority and work experience.

59.

Defendant has violated the Age Discrimination in Employment Act of 1967,

29 U.S.C. § 621 *et seq*., thus entitling Plaintiff to all appropriate relief provided

thereunder.

60.

As a direct and proximate result of the unlawful discriminatory and

retaliatory conduct of Defendant, committed in derogation of Plaintiff's federally

protected rights, Plaintiff has suffered lost wages and benefits of employment in an

amount to be determined at trial.

61.

As a direct and proximate result of the intentional and unlawful conduct of

Defendant, committed in derogation of Plaintiff's federally protected rights,

Plaintiff has suffered and continues to suffer emotional pain and suffering, mental

anguish, humiliation, loss of enjoyment of life, embarrassment, damage to her

reputation, and other past and future pecuniary losses.

**COUNT SIX**
**NEGLIGENT RETENTION AND SUPERVISION**

62.

Plaintiff realleges and incorporates by reference each and every

preceding paragraph as if fully set forth herein.

63.

Because of the pervasive, systematic and blatant acts of race based

discrimination and harassment directed toward African-American employees by

Paula Charles, Debra Markham and other employees of Defendant, Defendant

knew or should have known of the tendency of Ms. Charles and its other

employees to commit acts of racial discrimination and harassment in violation of

law.

64.

As a result of their propensity for racial discrimination and harassment, Ms. Charles and others employed by Defendant discriminated against and harassed Plaintiff on the basis of her race and age creating a hostile work environment.

65.

As a direct and proximate result of the wrongful and unlawful actions of Ms. Charles and others, and Defendant's negligent retention and supervision of the same, Plaintiff has suffered lost wages and benefits of employment in an amount to be determined at trial.

**COUNT SEVEN**
**PUNITIVE DAMAGES**

66.

Plaintiff re-alleges the preceding paragraphs as if set forth fully herein.

67.

Defendant's actions with respect to Plaintiff have shown willful misconduct, malice, fraud, wantonness, oppression, and complete want of care, thus entitling Plaintiff to an award of punitive damages in order to deter, punish and penalize Defendant for and from such conduct in the future.

## COUNT EIGHT
## ATTORNEY'S FEES AND COSTS

### 68.

Plaintiff re-alleges the preceding paragraphs as if set forth fully herein.

### 69.

Plaintiff is entitled to an award of attorney's fees and expenses of litigation on each and every cause of action alleged herein, because Defendant has acted in bad faith, been stubbornly litigious, and caused Plaintiff unnecessary trouble and expense.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays:

1) That Plaintiff's Complaint be granted;

2) That this Court issue process and require that Defendant be served as provided by law to answer each and every allegation in the Complaint;

3) That a trial by jury be granted as to the Complaint;

4) That judgment be granted against Defendants for general, nominal and/or compensatory damages in an amount to be determined at trial;

5) That the Plaintiff be awarded special damages and/or liquidated damages for lost wages and benefits including all back pay, front pay, and lost

benefits resulting from Defendants' unlawful discrimination, retaliation and prejudgment interest thereon in an amount to be determined at trial;

6) That all costs and attorney's fees be cast against Defendants;

7)    That Plaintiff be awarded punitive damages based on Defendant's willful, malicious, intentional, and deliberate acts in an amount to be determined at trial;

8) That Plaintiff be awarded reasonable attorney's fees and expenses of litigation;

9) That Plaintiff be awarded prejudgment interest at the rate allowed by law;

10)    That Plaintiff be awarded declaratory relief to the effect that Defendant has violated Plaintiff's statutory rights; and

11)    For such additional relief as the Court deems just and proper.

Respectfully submitted this 19th day of November, 2014.

Molden & Holley, LLC

_____
Oni A. Holley
Georgia Bar No. 362227
Alexander MacInnes
Georgia Bar No. 106163
Peachtree Center – Harris Tower
Suite 1245
233 Peachtree Street NE
Atlanta, Georgia 30303
Telephone:  404-324-4500
Facsimile:   404-324-4501
Email: oholley@moldenholley.com
        amacinnes@moldenholley.com

Attorneys for Plaintiff Windy Yarborough

## CERTIFICATE OF COMPLIANCE

The undersigned counsel certifies that the foregoing has been prepared in the

Times New Roman (14 point) font, as approved by the Court in LR 5.1B.

_____
Oni A. Holley
Georgia Bar No. 362227